IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VASILIY ERMICHINE, | ) | Case No. 18-cv-244 Erie |
| | ) | |
| Petitioner, | ) | SUSAN PARADISE BAXTER |
| | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| v. | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| WARDEN OF FCI MCKEAN, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | |

I.   Recommendation

It is respectfully recommended that the petition for a writ of habeas corpus filed by federal prisoner Vasiliy Ermichine[1] (Petitioner) pursuant to 28 U.S.C. § 2241 be dismissed for lack of jurisdiction.

II.   Report

   A.   Background

In December 2001, a jury in the United States District Court for the Southern District of New York (the "trial court") convicted Petitioner of two counts of racketeering and one count each of kidnapping in aid of racketeering, murder in aid of racketeering, and conspiracy to kidnap. During Petitioner's trial, the jury heard the following evidence:

- Petitioner and his co-defendant, Alexander Nosov, were founding members of "Tatarin's Brigade," an organized crime group "engaged in extortion, hostage taking, robbery, murder, and other illegal activity."

- On November 8, 1995, Petitioner and other members of Tatarin's Brigade spotted the eventual victim (a boxer and nightclub bouncer who had previously "humiliated" and "threatened" Nosov) at a Brooklyn auto body shop.

---

[1] Petitioner is incarcerated at FCI-McKean, a federal correctional institution located within the territorial boundaries of the Western District of Pennsylvania. The Warden of FCI-McKean is the Respondent in this action.

1

- Petitioner "led [the victim] into the shop's stockroom," where Nosov and a third member of Tatarin's Brigade – Natan Gozman – waited.

- A fight ensued, and Nosov shot the victim in the back.

- Gozman and Nosov put the wounded victim into their car and drove him to another Tatarin's Brigade member's house in New Jersey (despite the victim's pleas to go to a hospital), while Petitioner followed them in the victim's car.

- Once at the New Jersey house, Petitioner broke the victim's neck. Petitioner, Nosov and Gozman then buried the body in the backyard.

- Three years later, the victim's skeletal remains were exhumed and a "pathology report concluded that certain of [his] vertebrae were fractured prior to decomposition."

ECF No. 14 at 2-3. Because Gozman was a fugitive at the time of Petitioner's trial, evidence concerning the victim's state when he arrived at the house came from, *inter alia*, the testimony of the New Jersey homeowner, Alexander Spitchenko. *Id.* at 3.

In June 2003, the trial court sentenced Petitioner to concurrent life terms of imprisonment on each of the five guilty counts. Petitioner and Nosov each filed a direct appeal with the United States Court of Appeals for the Second Circuit. On December 28, 2004, the Court of Appeals issued an opinion affirming the trial court's judgment. *United States v. Nosov, et al.*, 119 Fed. Appx. 311 (2d Cir. 2004).

Petitioner subsequently filed a motion with the trial court to vacate his sentence pursuant to 28 U.S.C. § 2255. Petitioner raised a host of claims including that "newly discovered evidence" had emerged which established his actual innocence of the kidnapping and murder charges. ECF No. 14-3 at 19-34. The "new" evidence at issue consisted of Gozman's testimony in a July 2007 state-court proceeding[2] to the effect that the victim had died from a gunshot

---

[2] By that time, Gozman had been apprehended and pleaded guilty to his involvement in the murder and kidnapping.

wound while still in Brooklyn rather than from any action attributable to Petitioner in New Jersey. *Id*.

On May 12, 2011, a United States Magistrate Judge in the Southern District of New York issued a Report and Recommendation (R&R) that Petitioner's § 2255 petition be denied. ECF No. 14-3 at 2-34. The magistrate judge explained that Gozman's testimony: (1) fell short of that which would be required to prevail on a freestanding claim of actual innocence (assuming such a claim was cognizable); (2) largely corroborated the evidence from Petitioner's federal trial; (3) failed to "negate the fact that [Petitioner and his co-conspirators] together kidnapped and murdered [the victim] in an effort to elevate their status within…a criminal enterprise"; and (4) fell into the same category as other "alternate theories" that "were tested at trial, and failed." *Id.* at 25-27, 30. The magistrate judge also concluded: "[T]here is no reason why the Court should credit Gozman's testimony over that of Spitchenko's. Both men are convicted felons who have confessed to engaging in extortion, kidnapping, robbery, and murder as a part of a criminal enterprise. Certainly Gozman, who fled the country to escape trial in this Court, is no more credible than Spitchenko." *Id.* at 31. On September 20, 2011, the trial court adopted the magistrate judge's R&R and denied Petitioner's § 2255 motion. ECF No. 14-4 at 21.

In 2018, Petitioner filed an application with the Second Circuit Court of Appeals seeking authorization to file a second § 2255 motion.[3] Petitioner argued that two additional pieces of evidence – an October 3, 2017 declaration from Gozman, and a March 1999 FBI report – satisfied the "newly discovered evidence" requirements of § 2255(h)(1). On July 30, 2018, the

---

[3] By way of background, the 1996 amendments to the Antiterrorism and Effective Death Penalty Act (AEDPA) bar a federal prisoner from filing a second or successive § 2255 motion unless the appropriate court of appeals first certifies that the filing contains a claim based on either: (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h). *See also* 28 U.S.C. § 2244(a).

3

Court of Appeals denied Petitioner's application because he had failed to satisfy the statutory requirements of § 2255(h)(1):

> First, [Petitioner] has not made a showing that the evidence upon which he relies– [Gozman's] declaration and a March 1999 FBI report–is "newly discovered" within the meaning of the statute, because he has not explained when he first obtained the underlying information or why it was previously unavailable. *Herrera-Gomez v. United States*, 755 F.3d 142, 147 (2d Cir. 2014) (holding that § 2255 movants are required to act with "due diligence" in investigating and presenting their claims based on "newly discovered evidence").
>
> Second, an[d] in any event, even if the evidence is newly discovered, Petitioner has not made a prima facie showing that the evidence, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found [him] guilty of the offense." 28 U.S.C. § 2255(h)(1). Petitioner does not address all of the inculpatory evidence against him. *See Bell v. United States*, 296 F.3d 127, 129 (2d Cir. 2002) ("Because Bell provided no information about the evidence presented at his trial except stating that Hamilton was the government's 'chief witness,' he has not made a prima facie showing."). Nor does Petitioner address the fact that [Gozman's] declaration contradicts the statements made by [him] during [his] plea allocution and at a 2007 state court trial. Finally, Petitioner states in conclusory fashion that the FBI report exonerates him because it states that the murder took place in Brooklyn, rather than in New Jersey, but has made no showing that the report reflects anything other than a preliminary conclusion reached two years prior to commencement of his trial.

ECF No. 14-6 at 2-3.

After the Second Circuit Court of Appeals denied his application to file a second or successive § 2255 motion, Petitioner filed the instant writ of habeas corpus pursuant to 28 U.S.C. § 2241, continuing to assert a claim of actual innocence based on Gozman's October 3, 2017 declaration. He also claims that his trial attorney provided him with ineffective assistance of counsel and that the Government violated his right to due process. As relief, Petitioner seeks an order directing Respondent to release him from custody.

Respondent filed an answer on February 22, 2019, arguing that the petition must be dismissed for lack of jurisdiction. ECF No. 14. Petitioner, in response, suggests that his claims

fall within § 2255's "savings clause," discussed below. ECF No. 15. This matter is fully briefed and ripe for disposition.

B. Discussion

For federal prisoners, "[t]he 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." *McGee v. Martinez*, 627 F.3d 933, 935 (3d Cir. 2010); *see also Cardona v. Bledsoe*, 681 F.3d 533, 535-38 (3d Cir. 2012). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by federal inmates." *Cardona*, 681 F.3d at 535. Section 2255 motions must be filed in the federal district court that imposed the conviction and sentence the prisoner is challenging. 28 U.SC. § 2255(a). In contrast, a habeas corpus action pursuant to § 2241 must be brought in the custodial court – i.e., the federal district court in the district in which the prisoner is incarcerated. *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 178 (3d Cir. 2017).[4]

Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners may challenge the <u>validity</u> of their conviction or sentence on collateral review. *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (emphasis added). By enacting

---

[4]  Section 2241 petitions must be filed in the district in which the prisoner is incarcerated because:

> [t]he prisoner must direct his [§ 2241] petition to "the person who has custody over him." § 2242; *see also Wales v. Whitney*, 114 U.S. 564, 574, 5 S. Ct. 1050, 29 L. Ed. 277 (1885); *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-95, 93 S. Ct. 1123, 35 L.Ed.2d 443 (1973). Longstanding practice under this immediate custodian rule "confirms that in habeas challenges to present physical confinement...the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 124 S. Ct. 2711, 159 L.Ed.2d 513 (2004). And under the statute's jurisdiction of confinement rule, district courts may only grant habeas relief against custodians "within their respective jurisdictions." § 2241(a); *see also Braden*, 410 U.S. at 495, 93 S. Ct. 1123 ("[T]he language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian.").

*Bruce*, 868 F.3d at 178.

§ 2255, Congress provided "[a] new remedial mechanism" to "replace[] traditional habeas corpus for federal prisoners (at least in the first instance) with a process that allowed the prisoner to file a motion with the sentencing court on the ground that his sentence was, *inter alia*, imposed in violation of the Constitution or laws of the United States." *Boumediene v. Bush*, 553 U.S. 723, 774 (2008) (internal quotation marks omitted). The statute's "sole purpose was to minimize the difficulties encountered in [traditional] habeas corpus hearings by affording the same rights in another and more convenient forum." *Hayman*, 342 U.S. at 219; *see also Hill v. United States*, 368 U.S. 424, 427, 428 n.5 (1962). Thus, "a federal prisoner's first (and most often only) route for collateral review of his conviction or sentence is under § 2255." *Bruce*, 868 F.3d at 178.

As for § 2241, that statute "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the <u>execution</u> of his sentence." *Cardona*, 681 F.3d at 535 (internal quotations and citations omitted) (emphasis added); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005) (defining "execution of" the sentence to mean the manner in which it is "put into effect" or "carr[ied] out"). Two types of claims may ordinarily be litigated in a § 2241 proceeding. First, a prisoner may challenge conduct undertaken by the Federal Bureau of Prisons (the "BOP") that affects the duration of his custody. For example, a prisoner can challenge the manner in which the BOP is computing his federal sentence, *see, e.g.*, *Barden v. Keohane*, 921 F.2d 476, 478-79 (3d Cir. 1990), or the constitutionality of a BOP disciplinary action that resulted in the loss of good conduct sentencing credits, *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008). Secondly, a prisoner can challenge BOP conduct that "conflict[s] with express statements in the applicable sentencing judgment." *Cardona*, 681 F.3d at 536; *Woodall*, 432 F.3d at 243. The prisoner must "allege that

6

[the] BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *Cardona*, 681 F.3d at 536-37 (noting that the phrase "execution of the sentence" includes claims "that the BOP was not properly 'putting into effect' or 'carrying out' the directives of the sentencing judgment.") (internal quotations and alterations omitted).

Petitioner's claims in the instant § 2241 action do not fall into either of these categories. Rather than attacking the execution of his sentence, Petitioner contends that his underlying conviction was unconstitutional. As recounted above, § 2255 ordinarily prohibits a court from entertaining a § 2241 petition filed by a federal prisoner challenging the validity of his underlying conviction. There is, however, one important statutory exception: where it "appears that the remedy by [§ 2255 motion] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). This provision, commonly referred to as § 2255's "savings clause," forms the lone potential basis for Petitioner's claims in the instant case. *Bruce*, 868 F.3d at 174, 178-79.

Since the amendments to AEDPA were enacted in 1996, the Court of Appeals for the Third Circuit has only recognized one circumstance in which § 2255's remedy has been deemed "inadequate or ineffective": when a prisoner "had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate." *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997). In *Dorsainvil*, the inmate-petitioner, Ocsulis Dorsainvil, had been convicted of using a firearm during the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) despite the fact that he did not "use" the gun; it was merely present in the car from which the drugs were sold. After Dorsainvil had already litigated his initial (unsuccessful) § 2255 motion, the United States Supreme Court decided *Bailey v. United States*, 516 U.S. 137 (1995), in which it held that the "use" prong of § 924(c)(1) applied

7

only to "active employment of the firearm," as opposed to mere possession. *Bailey*, 516 U.S. at 144. Dorsainvil applied to the Third Circuit for permission to file a second or successive § 2255 petition, arguing that *Bailey* had rendered noncriminal the conduct for which he had been convicted. However, as noted above, § 2255 requires that a second or successive § 2255 motion be based on either "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *See* 28 U.S.C. § 2255(h). Because Bailey involved a new <u>statutory</u> rule, rather than "a new rule of <u>constitutional</u> law," the Third Circuit had no choice but to deny his request. *Dorsainvil*, 119 F.3d at 247-48 (quoting 28 U.S.C. § 2255) (emphasis added). The Court lamented, however, that "Dorsainvil [did] not have and, because of the circumstance that he was convicted for a violation of § 924(c)(1) before the *Bailey* decision, never had an opportunity to challenge his conviction as inconsistent with the Supreme Court's interpretation of § 924(c)(1)." *Id*. at 250-51. Deeming it a "complete miscarriage of justice to punish a defendant for an act that the law does not make criminal," the Court concluded that § 2255 was "inadequate or ineffective to test the legality of [Dorsainvil's] detention." *Id*. at 251 (internal quotations omitted; brackets in original). Thus, "in the unusual situation where an intervening change in statutory interpretation runs the risk that an individual was convicted of conduct that is not a crime, and that change in the law applies retroactively in cases on collateral review," a petitioner "may seek another round of post-conviction review under § 2241." *Bruce*, 868 F.3d at 179.

In its recent decision in *Bruce*, the Court of Appeals for the Third Circuit set forth the two conditions that a federal prisoner must satisfy in order to take advantage of § 2255's savings clause under *Dorsainvil*. "First, a prisoner must assert a claim of actual innocence on the theory that he is being detained for conduct that has subsequently been rendered non-criminal by an

8

intervening Supreme Court decision and our own precedent construing an intervening Supreme Court decision – in other words, when there is a change in statutory caselaw that applies retroactively in cases on collateral review." *Bruce*, 868 F.3d at 180 (internal quotations omitted). "[S]econd, the prisoner must be 'otherwise barred from challenging the legality of the conviction under § 2255.'" *Id.* (quoting *U.S. v. Tyler*, 732 F.3d 241, 246 (3d Cir. 2013)).

In the instant case, Petitioner has failed to satisfy the first of these conditions. Although he contends that he is actually innocent, none of his claims are premised upon the theory that he is being detained for conduct that has been rendered non-criminal by an intervening decision of statutory construction issued by the Supreme Court. Therefore, this action does not fall within § 2255's savings clause and this Court lacks jurisdiction to consider his claims.[5]

III.    Conclusion

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be dismissed, with prejudice.[6]

IV.    Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within

---

[5] As an aside, the fact that the Second Circuit Court of Appeals denied Petitioner's application for authorization to file a second or successive § 2255 motion does not, in and of itself, render § 2255 "inadequate or ineffective." *Dorsainvil*, 119 F.3d at 251. As explained by the Third Circuit Court of Appeals: "We do not suggest that § 2255 would be 'inadequate or ineffective' so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of [AEDPA's amendments to] § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255." *Id*. *See also Cradle v. United States ex rel. Miner*, 290 F.3d 536, 539 (3d Cir. 2002) ("Section 2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255.")

[6] Because "[f]ederal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement," the Court need not make a certificate of appealability determination in this matter. *Williams v. McKean*, 2019 WL 1118057, at *5 n. 6 (W.D. Pa. Mar. 11, 2019) (citing *United States v. Cepero*, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by *Gonzalez v. Thaler*, 565 U.S. 134 (2012)); 28 U.S.C. § 2253(c)(1)(B).

fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
United States Magistrate Judge

Dated:  June 5, 2019